IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE GOODRICH, )<br>)<br>　　　　Plaintiff, )<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>　　　　Defendant. ) | Case No. CIV-20-89-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant George Goodrich requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-seven years old at the time of the administrative hearing (Tr. 30, 234). He completed ninth grade and later earned his GED and has previously worked as a short order cook (Tr. 22, 35, 261). The claimant alleges inability to work since November 30, 2017, due to juvenile osteochondrosis of the femur, chronic hepatitis C, bipolar disorder I, and mild intermittent asthma (Tr. 260).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 30, 2017. His application was denied. ALJ Jodi B. Levine conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 29, 2019 (Tr. 13-23). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found at step four that the claimant could perform sedentary work as defined in 20 C.F.R. § 416.967(a), meaning here that he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk for four hours in an eight-hour workday, and sit six

hours in an eight-hour workday.  Additionally, she determined that he could have no exposure to fumes, odors, dusts, gases, or poor ventilation, and that he must use a cane for walking.  Finally, she found that he could understand, remember, and carry out simple instructions, and have no interaction with the public (Tr. 18).  The ALJ then concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, tube operator, waxer, and ampoule sealer (Tr. 21-23).

### Review

The claimant's sole contention of error is that the ALJ engaged in improper picking and choosing in evaluating the evidence as to his mental impairments, specifically the opinion from consultative examiner, Dr. Christopher Campbell, Ph.D.  The undersigned Magistrate Judge agrees with this contention, and the case should be remanded.

The ALJ found the claimant had the severe impairments of asthma, Legg-Calve-Perthes disease, bipolar II disorder, and antisocial personality disorder, as well as the nonsevere impairment of hepatitis C (Tr. 16). The relevant medical evidence reveals that the claimant received mental health treatment back in 2013 and 2014, when he was diagnosed with post-traumatic stress disorder, bipolar disorder, cannabis dependence, and amphetamine and other psychostimulant dependence (Tr. 438, 451).  The claimant also had some limited mental health treatment in July 2017, which included an additional diagnosis of anxiety disorder (Tr. 462).  This mental health treatment all pre-dates the claimant's alleged onset date of November 30, 2017.

On February 28, 2018, Dr. Campbell conducted a mental status examination of the claimant, in which he found the claimant to be a reliable historian who presented with signs and symptoms most consistent with antisocial personality disorder (Tr. 655). In particular, he noted that the claimant "reported a pervasive pattern of disregard for (and violation of) the rights of others" (Tr. 655). He found that bipolar (type I *and* type II) did not fit his reported symptoms, nor did post-traumatic stress disorder (Tr. 655). In addition to antisocial personality disorder, Dr. Campbell assessed the claimant with moderate major depressive disorder (recurrent), stimulant-use disorder (amphetamine-type substance, severe, in sustained remission by history), and cannabis use disorder (severe, in sustained remission by history) (Tr. 654). Dr. Campbell stated that the claimant's prognosis was poor as his antisocial behaviors and substance use history appeared severe. He recommended intensive, evidence-based, cognitive-behavioral therapy for this, including emotional regulation skills, frequent monitoring of behaviors, and techniques such as motivational interviewing and cognitive restructuring (Tr. 655).

As to his mental impairments, state agency physicians determined that the claimant had a mild impairment in the area of adapt or manage oneself, and moderate impairments in the areas of understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace (Tr. 83). Dr. Joan Holloway then found that the claimant was moderately limited in the ability to understand and remember detailed instructions and carry out detailed instructions, and markedly limited in the ability to interact appropriately with the general public (Tr. 87-88). Dr. Holloway concluded that the claimant could perform simple and some complex tasks, relate to supervisors and peers on

a superficial work basis, and adapt to a work situation, but that he could not relate to the general public (Tr. 89). On reconsideration, Dr. Lisette Constantin found that the claimant was moderately limited in the areas of maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracted them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting (Tr. 105-106). Additionally, she found the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 105-106). However, she reached the same conclusions as Dr. Holloway, *i. e.*, that the claimant could perform simple and some complex tasks, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that he could not relate to the general public (Tr. 107).

At the administrative hearing, the ALJ called Dr. Glenn Sternes to opine as to the claimant's mental impairments (Tr. 39). During the hearing, Dr. Sternes agreed that the claimant ought to have a simple, routine work environment, as well as no interaction with the public, and only superficial interaction with supervisors and peers (Tr. 48-50). Dr. Sternes clarified that the claimant would be able to have more interaction with supervisors

and peers than the public, but that the frequency of interaction with even supervisors and peers ought to be spread throughout the day (Tr. 49).

In her written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well as most of the medical evidence in the record. As to his mental impairments, the ALJ noted the state reviewing physician opinions, as well as Dr. Sternes's opinion and found they were largely supported by the record, finding they were consistent with Dr. Campbell's finding that the claimant appeared to be below average in intelligence and had difficulties with interpersonal relationships (Tr. 20). She disagreed, however, that the claimant could relate only superficially to supervisors and coworkers because the claimant had been pleasant and cooperative at his general medical appointments and exhibited normal behavior (Tr. 20). Although she made several references to certain pieces of Dr. Campbell's opinion, the ALJ provided no discussion of his conclusions or prognosis (Tr. 18-21). The ALJ ultimately concluded that the claimant was not disabled (Tr. 23).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. § 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion

or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.") 20 C.F.R. § 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. § 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3).

  In this case, the ALJ thoroughly summarized the opinions from Dr. Holloway, Dr. Constantin, and Dr. Sternes, but only made passing references to Dr. Campbell's evaluation where it supported her foregone conclusions. This was error because the regulations discussed above require the ALJ to explain how persuasive she found the medical opinions she considered, and as part of that explanation, also require her to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

Here, the ALJ failed to apply these factors at all to Dr. Campbell's opinion. Indeed, she rejected an opinion adopted by all reviewing and examining physicians because she found that the claimant had been pleasant at his general medical appointments. The undersigned Magistrate Judge notes that a pleasant or cooperative demeanor at a medical appointment is a sufficiently different dynamic from that of supervisor or coworker that the ALJ should not have relied on her own assumption on this point in order to reject all available medical opinions. It was error for the ALJ to "pick and choose" her way through the evidence in this record in order to avoid finding the claimant disabled, which appears to be the case based on the transcript from the administrative hearing (Tr. 54-56). *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

Because the ALJ failed to properly evaluate Dr. Campbell's opinion, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he

is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**